ROCK CREEK STEAMBOAT COMPANY *vs.*
CHARLES BOYD.

*Cross-Examination of Witness—Non-Reversible Errors at
Trial—Action Against Steamboat Company for
Failing to Stop at Wharf to Take Passen-
ger Aboard—Measure of Damages.*

The questions asked of a witness on cross-examination concern-
ing the subject-matter of the suit should relate only to those
matters about which the witness had testified on his direct
examination.

The admission of incompetent evidence to prove a fact which
was afterwards conceded in the cause is a non-reversible
error.

Although an instruction given by the trial Court may be de-
fective in that it is vague and fails to mention the particular
kind of loss or injury for which the plaintiff in an action of
tort is entitled to recover damages, yet, when the verdict of
the jury is for a small sum, it is obvious that the defendant
was not injured by such instruction, and therefore the giving
of it is not a reversible error.

In an action against a steamboat company, plaintiff's evidence showed that he had bought a round-trip ticket which entitled him to return from a certain wharf at which the boat should have stopped upon notice or signal; that he gave such notice or signal, but the boat did not stop for him; that he was consequently obliged to walk eleven miles at night in the rain to a railway, and that as a result of the fatigue, exposure and wet so encountered, plaintiff became ill. The defendant proved that plaintiff could easily have obtained lodging for the night at the wharf. Plaintiff offered no prayer for an instruction to the jury as to the measure of damages. The defendant asked the Court to instruct the jury that the only damages recoverable were the cost of the ticket, plus a reasonable charge for lodging, or if the plaintiff was compelled to return home that night, then the cost of obtaining a conveyance to his destination, but that he cannot recover any damages for sickness brought about through exposure incident to a walk voluntarily and unnecessarily taken by plaintiff with a want of care for his own safety. The Court refused this prayer, and told the jury that the measure of damages was the amount of money necessarily expended by the plaintiff as the result of the negligence of the defendant, but that he was not entitled to damages for expenses unnecessarily incurred by him, or for sickness resulting from exposure unnecessarily undergone. *Held,* that the prayer offered by the defendant was proper, and that the Court's instruction was not a wholly adequate substitute therefor, but that the error in the rejection of its prayer worked no injury to the defendant, since the jury found a verdict for the plaintiff for only a small sum of money.

*Decided June 29th, 1909.*

Appeal from the Superior Court of Baltimore City (STOCKBRIDGE, J.).

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*Raymond S. Williams* and *Jacob S. New* (with whom was *John F. Williams* on the brief), for the appellant.

*Edward A. O'Mara,* for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellee sued the appellant Steamboat Company in the Superior Court of Baltimore City for damages alleged to have been caused by its negligence in failing to stop its boat for him at one of its landings.

The declaration alleges in substance that the Steamboat Company, having sold to the appellee a round trip ticket by its line from Baltimore to Rock Creek and return, carried him by one of its boats to Rock Creek, but the boat failed to stop there for him on its return trip although he was waiting, on the wharf at that place, when it passed by without stopping, and that in addition thereto he gave the officers of the boat notice from the wharf that he was there waiting to be taken back to Baltimore. The defendant pleaded that it did not commit the wrong alleged and the plaintiff joined issue on the plea. On the trial of the case the plaintiff secured a judgment in his favor from which the Steamboat Company took this appeal.

There is evidence in the record tending to show that the appellant company owns a steamboat called the "Petrel" which makes two round trips a day from Baltimore to Rock Creek in Anne Arundel County, stopping at any one of about a dozen private wharfs in the creek when requested or signalled to do so, but not otherwise. On Saturday December 14th, 1907, the appellee purchased a round trip ticket by the boat for Gray's wharf, one of the private landings on the creek. He went to Gray's by the afternoon boat intending to return that night but the boat failed to stop for him when it passed the wharf on the return trip, at about six o'clock in the evening. The evidence in conflicting as to his having requested or signalled the boat to stop for him, but that was a question for the jury.

There was a slight cover of snow on the ground at the time and it was raining. Several persons living near the wharf offered the appellee lodging for the night after the boat failed to stop for him, but he declined the offers. Having procured someone to row him across the creek to Osborne's wharf, he walked nearly eleven miles through the snow and rain until he reached the Curtis Bay trolley line by which he returned to Baltimore, arriving at his home about eleven o'clock at night exhausted by fatigue and drenched with rain. He was quite ill the next day and although he returned to his employment, of barkeeper at a rathskeller, on the following Monday he continued to be ill, and on December 27th was obliged to give up his employment and remained in ill health during the remainder of the winter and the greater part of the next summer, first with grippe and afterwards a "stomach trouble of some sort." The time lost from his employment, attributed by him to the exposure on his walk home from Gray's wharf consisted of ten days when he went home on December 27th, 1907, and about six weeks during the following summer and two weeks in the fall of 1908. His salary was fifteen dollars a week. During the period referred to he, from time to time, either called to see or was visited by Dr. Muse who saw him in all about thirty or forty times during 1907 and 1908, and expressed the opinion that his sickness was due to exposure and cold. He was also treated from about the middle of November, 1908, by Dr. W. A. Cox who found him suffering from intestinal trouble for which he was still treating him at the time of the trial. Dr. Cox expressed no opinion as to the probable cause of the plaintiff's illness. There is no evidence of the payment of any money by the plaintiff to his physicians for their services or of other expenses resulting from his illness.

The record contains three bills of exceptions, two to the rulings on evidence and one to the Court's action on the prayers. As the appellant's counsel stated at the hearing before us that he did not press the first exception, it will receive no further notice from us.

The second exception was taken to the admission in evidence, over the defendant's objection of a blank form of the printed bill of lading usually issued by the Steamboat Company for freight received by it for transportation.  At the head of the bill was a list of the Rock Creek landings, among which was "Cooks" which was admitted to be Gray's wharf. The form was offered in evidence by the plaintiff upon the cross-examination of the manager of the Steamboat Company who had gone upon the stand in its behalf.  As it did not relate to the matters in reference to which the witness had testified in his direct examination it was not properly admissible upon his cross-examination.  *Duterra* v. *Babylon,* 83 Md. 538; *Griffith* v. *Diffenderfer,* 50 Md. 478. · It would have been admissible for the plaintiff as part of his own evidence, accompanied by proof of its publication in some manner by the company, in order to show what were its stations on Rock Creek.  We do not however regard the admission of this evidence as reversible error because it was conceded in the argument that the Petrel on its afternoon return trip stopped at Gray's wharf upon notice or signal and not otherwise.  At the close of the evidence, on the trial of the case the plaintiff offered no prayers, but the defendant offered seven.  The learned Judge below refused all of the defendant's prayers except the first and second, and gave an instruction of his own to the jury.  The defendant excepted to the entire action of the Court on the prayers but relied in this Court only upon the rejection of its third and fifth prayers and the giving by the Court of his own instruction.

The defendant's third and fifth prayers were as follows:

3rd. "The defendant prays the Court to instruct the jury that if they find for the plaintiff the only proper damages are the cost of the ticket, plus any reasonable charge for lodging, or if the plaintiff was compelled to return to the city that night, then as a damage, the reasonable cost of obtaining a conveyance to his destination; and the Court further instructs the jury that the plaintiff cannot recover any damages for any sickness or injury brought about through exposure

incident to a walk voluntarily and unnecessarily taken by him with recklessness and want of care for his own personal safety and comfort."

5th. "If the jury find for the plaintiff they will, when estimating his damages, not allow him any thing on account of the fact that he was exposed to the elements, nor for any sickness he may have suffered in consequence of such exposure and walk to the cars at Curtis Bay nor for any time lost as is claimed by him, after his return to Baltimore, in consequence of such walk and exposure."

The instruction given by the Court to the jury is as follows:

"The Court instructs the jury in case they should find a verdict for the plaintiff under the foregoing instructions, that the measure of damages is the amount of money necessarily expended by the plaintiff as the result of the negligence of the defendant, together with the proportionate cost of the round-trip ticket purchased by the plaintiff and not used by him, and that the plaintiff is not entitled to any damages for expenses unnecessarily incurred by him, or for sickness or injury resulting to him from exposure unnecessarily undergone."

The contention of the appellant upon this branch of the case may be succinctly stated in two propositions. The first is that, as the plaintiff offered no prayer on the measure of damages and the defendant's third and fifth prayers stated in a substantial and concrete form the true criteria, deducible from the facts in evidence, for the guidance of the jury in estimating damages, the Court erred in rejecting those two prayers and substituting for them his own instruction which was in abstract terms and did not direct the jury as to the precise elements or items of damage for which the plaintiff was entitled to recover in this case, but permitted them to speculate without proper restraint in ascertaining the amount of damages. The second is that the statement, in the last clause of the Court's instruction, that the plaintiff was not entitled to damages for sickness or injury resulting to him from exposure unnecessarily undergone; in effect charged

the jury that he was entitled to recover for sickness or injury resulting to him from exposure necessarily undergone; and that such an instruction was erroneous in this case because the plaintiff might have easily escaped all of the exposure he suffered in consequence of his walk home on an inclement night by simply accepting the lodging for the night which the undisputed evidence shows to have been offered him by several persons residing near by the wharf on which he was left by the defendant's passing boat.

Upon a close examination of the Court's instruction to the jury it becomes apparent that the difference in principle between it and the rejected third and fifth prayers for which it was substituted is slight but the application of the principle involved to the situation presented by the evidence is not made as exactly or completely by the instruction as by the prayers.

We have held in a number of cases that "while the simple question whether damages have been sustained by the breach of duty or the violation of right and the extent of damages sustained as the direct consequence thereof are matters within the province of the jury 'The Court must decide and direct the jury in respect to what elements· and within what limits damages may be estimated in the particular action.'"  *B. & O. R. R. Co.* v. *Carr,* 71 Md. 143; *Belt R. R. Co.* v. *Sattler,* 102 Md. 605; *W. U. Tel. Co.* v. *Lehman,* 105 Md. 450.  In *Westn. Md. R. R. Co.* v. *Martin,* 110 Md. 554, we reviewed somewhat at length our previous rulings upon this subject.

In view of all the circumstances of this case, especially the remoteness of some of the facts proven as elements of damage we think the appellant as defendant below was entitled to have sent to the jury the instructions as to the elements and limits of damages set forth in its third and fifth prayers and that it was error to reject them and substitute for them the less precise instructions of the Court. We do not think, however, that the error is one calling for a reversal of the judgment as the smallness of the verdict of one hundred dollars

found by the jury satisfies us that they were not seriously if at all misled by the indefiniteness of the Court's instruction to them. We will therefore affirm the judgment.

*Judgment affirmed with costs.*